UNITED STATES DISTRICT COURT

DISTRICT OF NEVADA

* * *

| | |
|---|---|
| ROBERT LECLAIR,<br><br>          Plaintiff,<br><br>v.<br><br>MARTIN NAUGHTON, *et al.*,<br><br>          Defendants. | Case No. 3:19-CV-0404-MMD-CLB<br><br>**REPORT AND RECOMMENDATION OF U.S. MAGISTRATE JUDGE**[1]<br><br>[ECF No. 30] |

This case involves a civil rights action filed by Plaintiff Robert LeClair ("LeClair") against Defendants Martin Naughton ("Naughton"), Charles Daniels ("Daniels"), James Dzurenda ("Dzurenda"), Harold Wickham ("Wickham"), Romeo Aranas ("Aranas"), and Michael Minev ("Minev") (collectively referred to as "Defendants"). Currently pending before the Court is Defendants' motion for summary judgment. (ECF Nos. 30, 32.)[2] LeClair opposed the motion, (ECF No. 34), and Defendants replied. (ECF No. 36.) For the reasons stated below, the Court recommends that Defendants' motion for summary judgment, (ECF No. 30), be granted.

**I.     FACTUAL BACKGROUND**

LeClair is an inmate in the custody of the Nevada Department of Corrections ("NDOC") and is currently incarcerated the Lovelock Correctional Center ("LCC"). On July 17, 2019, LeClair filed a *pro se* civil rights complaint under 42 U.S.C. § 1983 for events that occurred while LeClair was incarcerated at the Northern Nevada Correctional Center ("NNCC"). (ECF No. 5.) Specifically, LeClair alleges an Eighth Amendment deliberate indifference to serious medical needs claim against Defendants Naughton, Daniels,

---

[1]     This Report and Recommendation is made to the Honorable Miranda M. Du, United States District Judge. The action was referred to the undersigned Magistrate Judge pursuant to 28 U.S.C. § 636(b)(1)(B) and LR IB 1-4.

[2]     ECF No. 32 consists of LeClair's medical records filed under seal.

Dzurenda, Wickham, Aranas, and Minev based on denial of treatment for Hepatitis C ("Hep-C"). (ECF No. 12.)

Hep-C is a blood borne pathogen transmitted primarily by way of percutaneous exposure to blood. Chronic Hep-C is diagnosed by a qualified medical practitioner. Chronic Hep-C results in liver fibrosis. (ECF No. 30-5 at 2 (Declaration of Dr. Minev).) Fibrosis is the initial stage of liver scarring. (*Id.*) Chronic Hep-C builds up fibrosis (scar tissue) in the afflicted person's liver. (*Id.*) When the fibrosis increases, it can lead to cirrhosis of the liver, a liver disease that forestalls common liver function. (*Id.*) When liver cells are not functioning, certain clinical signs will appear on the patient, which include but not limited to: (1) spider angiomata (vascular lesions on the chest and body); (2) palmar erythema (reddening of the palms); (3) gynecomastia (increase in breast gland size); (4) ascites (accumulation of fluid in the abdomen); and (5) jaundice (yellow discoloration of the skin and mucous membranes). (*Id.*)

Medical Directive ("MD") 219 governs treatment of Hep-C at the NDOC. (*See* ECF No. 30 at 6.) At the time LeClair filed his initial grievance related to his Hep-C treatment, inmates that tested positive for Hep-C were enrolled in the Infectious Disease Chronic Clinic for Hepatitis C. (*Id.*) A committee made up of at least three senior members of the medical department reviewed each Hep-C positive inmate and evaluated treatment options. (*Id.*)

A non-invasive method of procuring a patient's Chronic Hep-C progression, in addition with the clinical signs, is through the Aspartate Aminotransferase Platelet Ratio Index ("APRI") formula. (ECF No. 30-5 at 3.) To calculate a patient's APRI score, the patient's blood platelet count, which is obtained through a blood test, is necessary. (*Id.*) An APRI score is calculated using the AST to Platelet Ratio Index. (*Id.*) NDOC prioritized treatment based on an inmates APRI score. (ECF No. 30 at 6.) Inmates with an APRI score greater than 2 were prioritized for direct acting antiviral treatment ("DAA"). (*Id.*) DAA treatment, such as Epclusa, is an FDA-approved treatment for Hep-C. (ECF No. 30-3 at 17 (defining DAA).) Inmates with a score of less than 2 were not prioritized for the Hep-C

DAA treatment protocols but did receive treatment and monitoring through the Hep-C Clinic. (ECF No. 30 at 6.)

The current version of MD 219 ensures each inmate has been or is tested for Hep-C, and that those inmates who test positive, and who do not make the voluntary choice to opt out of treatment, will be treated with DAAs. (ECF No. 30-3 at 17-22.) The policy applies to all inmates unless there are medical issues that would make doing so cause more harm. (*Id.*) MD 219 established three priority levels for DAA treatment. This priority level system guarantees that all Hep-C patients will receive DAAs as needed and required to treat their condition, while at the same time providing medical personnel with discretion and flexibility to safeguard that those in a lower level of priority obtain expedited DAA treatment when in the sound judgment of the medical provider examining the patient it is determined that it is medically necessary. (*Id.* at 19.)

LeClair alleges he has had Hep-C since 2003. (ECF No. 11 at 6-7.) LeClair was first enrolled in the NDOC Chronic Disease Clinic for Hep-C in 2012. (ECF No. 32-1 (sealed).) In October 2018, LeClair's APRI score was 0.74 and his Fibrosure score was F3 which is the 'Bridging Fibrosis' level but below the Cirrhosis level. (ECF Nos. 30 at 3; 32-2 at 4 (sealed).) In December 2018, LeClair filed a grievance claiming he needed treatment for his Hep-C. (ECF No. 30-2.) He received a response that he was being monitored and had been submitted to the review committee for possible treatment. (*Id.*) On October 22, 2019, LeClair had an abdominal ultrasound that showed "mild hepatomegaly, no liver mass." (ECF No. 32-4 (sealed).) LeClair's APRI score in October 2019 was 0.73 which was not within the range to require immediate treatment under MD 219 as it existed at that time. (ECF No. 30-5 at 4.) Additionally, LeClair did not exhibit any symptoms of decreased liver function. (*Id.*)

On November 2, 2019, LeClair was seen by Kevin Kuriakose, M.D. of Renown Regional Medical Center who diagnosed LeClair with "compensated cirrhosis" and prescribed DAA treatment (Epclusa) for Hep-C. (ECF Nos. 32-1 at 10; 32-3 at 3 (sealed).) LeClair completed DAA treatment on February 3, 2020. (ECF No. 32-1 at 3 (sealed).)

LeClair was again seen by Dr. Kuriakose on February 25, 2020, for a follow-up appointment for his Hep-C treatment. (ECF No. 32-1 at 3-6 (sealed).) Lab work completed following LeClair's treatment shows no evidence of Hep-C in his system. (ECF No. 32-5 at 2, 3, 5 (sealed).)

Defendant Dzurenda, former Director of the NDOC, and Defendant Aranas, former Medical Director for the NDOC, each filed declarations in support of the motion for summary judgment, stating that they did not recall having direct interactions with LeClair and did not treat LeClair. They further stated they did not deny treatment to LeClair, as decisions for treatment were made by the Utilization Review Panel or the treating physician. (ECF Nos. 30-4; 30-6.) Defendant Dzurenda further stated that neither he, nor his successor, Current Director of the NDOC Charles Daniels, were responsible for the formulation of Medical Directives. (ECF No. 30-4.)

Defendant Minev, NDOC's current Medical Director, filed a declaration in support of the motion for summary judgment, stating as follows: if a patient's APRI score is above 0.5, there is likely some liver damage (fibrosis) and if the APRI score is above 1.5, the patient likely has or is quickly approaching cirrhosis of the liver. The APRI score is not definitive but is a reliable indicator of liver fibrosis. As part of his duties, Minev oversees the Chronic Hep-C treatment program at Southern Desert Correctional Center. He has reviewed test results and medical records of NDOC inmates to determine who required advanced forms of Hep-C treatment. In addition to APRI scores, Minev also considers the inmates' clinical signs of forestalled or reduced liver function. He almost always declined to recommend an NDOC inmate with Hep-C, who has an APRI score near or below 1.0 for advanced forms of Hep-C treatment due to risk that drug intervention may cause to a patient with Hep-C. All inmates who test positive for Hep-C and are otherwise medically indicated receive advanced treatment. (ECF No. 30-5.)

Moreover, as to LeClair specifically, Minev stated he reviewed LeClair's medical records and can attest that LeClair suffered from Chronic Hep-C and his APRI score, based on blood test results in October 2019, was 0.73. LeClair did not exhibit any

symptoms of decreased liver function, namely: (1) spider angiomata; (2) palmar erythema; (3) gynecomastia; (4) ascites; or (5) jaundice. Based on LeClair's APRI score and lack of clinical signs indicating decreased liver function, LeClair was not a candidate for Hep-C treatment at the time of his grievance. LeClair has since received treatment and no longer shows Hep-C in his system. (ECF No. 30-5 at 4.)

Defendant Wickham, former Deputy Director for the NDOC, filed a declaration in support of the motion for summary judgment, stating that he had no authority to order treatment for Hep-C for LeClair, as he was not part of the committee that could have ordered treatment, and Wickham was unaware of LeClair's medical conditions, including his Hep-C status. (ECF No. 30-7.)

Deposition testimony from Defendant Naughton, medical doctor for the NDOC, states as follows: Naughton first saw LeClair regarding his Hep-C on June 15, 2017. (ECF No. 34-1 at 4.) LeClair's APRI scores as of December 7, 2017, and December 11, 2019, were 0.974 and 0.316, respectively. (*Id.* at 5.) His FibroSure score as of October 27, 2018, was in the F3 range, indicating scarring. (*Id.*) Diagnostic Health Associates, who are gastroenterologists, performed an endoscopy of LeClair which showed mild hepatomegaly, meaning the liver was mildly enlarged. (*Id.*) Mild enlargement can be caused by Hep-C but could also be caused from a fatty liver or another cause. (*Id.* at 6.) Records indicated LeClair did not have any history of decompensated liver disease—decompensated meaning that the liver is badly damaged, not working properly, and an indication the liver is failing. (*Id.*) Finally, Naughton stated he did not form an opinion about either any delay in receiving DAA medication harmed LeClair. (*Id.* at 7.)

In support of his opposition to the motion for summary judgment, LeClair includes the expert report of Dr. Amanda Cheung. (ECF No. 34-2.) Dr. Cheung's report discusses the standard of care for Hep-C treatment. The summary of her report is as follows:

> Based on the review of the medical documents available on these six individuals, it is my opinion that Hep-C treatment was delayed. If these individuals were seen in the outpatient sector, treatment would have been recommended immediately upon diagnosis regardless of fibrosis staging. Currently, the purpose of fibrosis staging is to determine the correct type

5

and length of therapy, rather than to determine whether to provide therapy. (*Id.* at 6.) Dr. Cheung's report additionally states that "chronic Hep-C infection carries increased morbidity and mortality risk. Once there is progression to cirrhosis, patients may develop liver failure and liver cancer. Even after Hep-C cure, the risk of liver cancer persists. Thus, the ultimate goal is to achieve Hep-C cure prior to development of cirrhosis." (*Id.* at 4.) Importantly, Dr. Cheung's report does not address whether LeClair suffered any harm based on or because of the delay in treatment.

Finally, in support of his opposition, LeClair provides a deposition transcript from Defendant's expert, Dr. Chad Zawitz. (ECF No. 34-5.) The deposition focuses more generally on treatment of Hep-C and NDOC's policy but does not specifically address LeClair. (*See id.*)

## II.   PROCEDURAL HISTORY

On July 17, 2019, LeClair initiated this action by filing a *pro se* civil rights complaint under 42 U.S.C. § 1983 for events that occurred while LeClair was incarcerated at NNCC. (ECF Nos. 1, 5.) On July 29, 2020, LeClair, through counsel, filed a second amended complaint. (ECF No. 11.) On screening, the District Court permitted LeClair to proceed with his second amended complaint which alleges an Eighth Amendment deliberate indifference to serious medical needs claim against Defendants based on denial of treatment for hep-C. (ECF No. 12.)

Around the same time LeClair filed his complaint, many other individuals in the custody of the NDOC filed similar actions alleging that NDOC's policy for treating Hep-C amounts to deliberate indifference in violation of the Eighth Amendment. (ECF No. 27.) As a result, the Court consolidated numerous actions for the purpose of conducting consolidated discovery. (*Id.; see also In Re Hep-C Prison Litigation*, 3:19-CV-00577-MMD-CLB.) While LeClair's case was not part of the consolidated class, he was still provided with the discovery obtained in the Hep-C consolidated action. (ECF No. 27.)

Following an additional period of discovery, on May 16, 2022, Defendants filed their motion for summary judgment arguing LeClair cannot prevail as: (1) LeClair was

treated appropriately and in accordance with the medical directives and standards of care; (2) many of the Defendants were not treating physicians and thus did not personally participate in the alleged constitutional violations; and (3) Defendants are entitled to qualified immunity. (ECF No. 30.) LeClair opposed the motion, (ECF No. 34), and Defendants replied. (ECF No. 36.)

### III.   LEGAL STANDARDS

"The court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a); *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986). The substantive law applicable to the claim determines which facts are material. *Coles v. Eagle*, 704 F.3d 624, 628 (9th Cir. 2012) (citing *Anderson v. Liberty Lobby*, 477 U.S. 242, 248 (1986)). Only disputes over facts that address the main legal question of the suit can preclude summary judgment, and factual disputes that are irrelevant are not material. *Frlekin v. Apple, Inc.*, 979 F.3d 639, 644 (9th Cir. 2020). A dispute is "genuine" only where a reasonable jury could find for the nonmoving party. *Anderson*, 477 U.S. at 248.

The parties subject to a motion for summary judgment must: (1) cite facts from the record, including but not limited to depositions, documents, and declarations, and then (2) "show[] that the materials cited do not establish the absence or presence of a genuine dispute, or that an adverse party cannot produce admissible evidence to support the fact." Fed. R. Civ. P. 56(c)(1). Documents submitted during summary judgment must be authenticated, and if only personal knowledge authenticates a document (i.e., even a review of the contents of the document would not prove that it is authentic), an affidavit attesting to its authenticity must be attached to the submitted document. *Las Vegas Sands, LLC v. Neheme*, 632 F.3d 526, 532-33 (9th Cir. 2011). Conclusory statements, speculative opinions, pleading allegations, or other assertions uncorroborated by facts are insufficient to establish the absence or presence of a genuine dispute. *Soremekun v. Thrifty Payless, Inc.*, 509 F.3d 978, 984 (9th Cir. 2007).

The moving party bears the initial burden of demonstrating an absence of a

genuine dispute. *Soremekun*, 509 F.3d at 984. "Where the moving party will have the burden of proof on an issue at trial, the movant must affirmatively demonstrate that no reasonable trier of fact could find other than for the moving party." *Soremekun*, 509 F.3d at 984. However, if the moving party does not bear the burden of proof at trial, the moving party may meet their initial burden by demonstrating either: (1) there is an absence of evidence to support an essential element of the nonmoving party's claim or claims; or (2) submitting admissible evidence that establishes the record forecloses the possibility of a reasonable jury finding in favor of the nonmoving party. *See Pakootas v. Teck Cominco Metals, Ltd.*, 905 F.3d 565, 593-94 (9th Cir. 2018); *Nissan Fire & Marine Ins. Co. v. Fritz Cos.*, 210 F.3d 1099, 1102 (9th Cir. 2000). The court views all evidence and any inferences arising therefrom in the light most favorable to the nonmoving party. *Colwell v. Bannister*, 763 F.3d 1060, 1065 (9th Cir. 2014). If the moving party does not meet its burden for summary judgment, the nonmoving party is not required to provide evidentiary materials to oppose the motion, and the court will deny summary judgment. *Celotex*, 477 U.S. at 322-23.

Where the moving party has met its burden, however, the burden shifts to the nonmoving party to establish that a genuine issue of material fact actually exists. *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.,* 475 U.S. 574, 586, (1986). The nonmoving must "go beyond the pleadings" to meet this burden. *Pac. Gulf Shipping Co. v. Vigorous Shipping & Trading S.A.*, 992 F.3d 893, 897 (9th Cir. 2021) (internal quotation omitted). In other words, the nonmoving party may not simply rely upon the allegations or denials of its pleadings; rather, they must tender evidence of specific facts in the form of affidavits, and/or admissible discovery material in support of its contention that such a dispute exists. *See* Fed.R.Civ.P. 56(c); *Matsushita,* 475 U.S. at 586 n. 11. This burden is "not a light one," and requires the nonmoving party to "show more than the mere existence of a scintilla of evidence." *Id.* (quoting *In re Oracle Corp. Sec. Litig.*, 627 F.3d 376, 387 (9th Cir. 2010)). The non-moving party "must come forth with evidence from which a jury could reasonably render a verdict in the non-moving party's favor." *Pac. Gulf Shipping*

*Co.*, 992 F.3d at 898 (quoting *Oracle Corp. Sec. Litig.*, 627 F.3d at 387). Mere assertions and "metaphysical doubt as to the material facts" will not defeat a properly supported and meritorious summary judgment motion. *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586–87 (1986).

When a *pro se* litigant opposes summary judgment, his or her contentions in motions and pleadings may be considered as evidence to meet the non-party's burden to the extent: (1) contents of the document are based on personal knowledge, (2) they set forth facts that would be admissible into evidence, and (3) the litigant attested under penalty of perjury that they were true and correct. *Jones v. Blanas*, 393 F.3d 918, 923 (9th Cir. 2004).

Upon the parties meeting their respective burdens for the motion for summary judgment, the court determines whether reasonable minds could differ when interpreting the record; the court does not weigh the evidence or determine its truth. *Velazquez v. City of Long Beach*, 793 F.3d 1010, 1018 (9th Cir. 2015). The court may consider evidence in the record not cited by the parties, but it is not required to do so. Fed. R. Civ. P. 56(c)(3). Nevertheless, the court will view the cited records before it and will not mine the record for triable issues of fact. *Oracle Corp. Sec. Litig.*, 627 F.3d at 386 (if a nonmoving party does not make nor provide support for a possible objection, the court will likewise not consider it).

**IV.  DISCUSSION**

On May 16, 2022, Defendants filed the instant motion for summary judgment arguing: (1) Defendants were not deliberately indifferent to LeClair's serious medical needs; (2) Aranas, Minev, Wickham, Daniels, and Dzurenda had no personal participation in the alleged constitutional violations; and (3) alternatively, Defendants are entitled to qualified immunity. (ECF No. 30.) In opposition, LeClair asserts that Defendants denied him Hep-C treatment for years—a medically unacceptable course of treatment under the circumstances—and did so knowing the excessive risks to his health. (ECF No. 34.) Further, LeClair asserts that Defendants' denial of Hep-C treatment harmed him, leading

him to ultimately develop cirrhosis of the liver. (*Id.*)

A. **Deliberate Indifference to Serious Medical Needs**

The Eighth Amendment "embodies broad and idealistic concepts of dignity, civilized standards, humanity, and decency" by prohibiting the imposition of cruel and unusual punishment by state actors. *Estelle v. Gamble*, 429 U.S. 97, 102 (1976) (internal quotation omitted). The Amendment's proscription against the "unnecessary and wanton infliction of pain" encompasses deliberate indifference by state officials to the medical needs of prisoners. *Id.* at 104 (internal quotation omitted). It is thus well established that "deliberate indifference to a prisoner's serious illness or injury states a cause of action under § 1983." *Id.* at 105. Article 1, Section 6 of the Nevada Constitution mirrors the Eighth Amendment's Cruel and Unusual Punishment Clause, and provides protections that are coextensive with the Eighth Amendment of the United States Constitution. Courts in this district have applied the same legal standards to the cruel and unusual punishment corollary included in Article 1, Section 6 of the Nevada Constitution as are applied to the corollaries in the United States Constitution. *See, e.g, Fowler v. Sisolak*, No. 2:19-cv-01418-APG-DJA, 2020 WL 6270276, at *4 (D. Nev. Oct. 26, 2020).

Courts in Ninth Circuit employ a two-part test when analyzing deliberate indifference claims. The plaintiff must satisfy "both an objective standard—that the deprivation was serious enough to constitute cruel and unusual punishment—and a subjective standard—deliberate indifference." *Colwell*, 763 F.3d at 1066 (internal quotation omitted). First, the objective component examines whether the plaintiff has a "serious medical need," such that the state's failure to provide treatment could result in further injury or cause unnecessary and wanton infliction of pain. *Jett v. Penner*, 439 F.3d 1091, 1096 (9th Cir. 2006). Serious medical needs include those "that a reasonable doctor or patient would find important and worthy of comment or treatment; the presence of a medical condition that significantly affects an individual's daily activities; or the existence of chronic and substantial pain." *Colwell*, 763 F.3d at 1066 (internal quotation omitted).

Second, the subjective element considers the defendant's state of mind, the extent of care provided, and whether the plaintiff was harmed. "Prison officials are deliberately indifferent to a prisoner's serious medical needs when they deny, delay, or intentionally interfere with medical treatment." *Hallett v. Morgan,* 296 F.3d 732, 744 (9th Cir. 2002) (internal quotation omitted). However, a prison official may only be held liable if he or she "knows of and disregards an excessive risk to inmate health and safety." *Toguchi v. Chung*, 391 F.3d 1050, 1057 (9th Cir. 2004). The defendant prison official must therefore have actual knowledge from which he or she can infer that a substantial risk of harm exists and make that inference. *Colwell*, 763 F.3d at 1066. An accidental or inadvertent failure to provide adequate care is not enough to impose liability. *Estelle*, 429 U.S. at 105–06. Rather, the standard lies "somewhere between the poles of negligence at one end and purpose or knowledge at the other. . ." *Farmer v. Brennan*, 511 U.S. 825, 836 (1994). Accordingly, the defendants' conduct must consist of "more than ordinary lack of due care." *Id.* at 835 (internal quotation omitted).

Moreover, the medical care due to prisoners is not limitless. "[S]ociety does not expect that prisoners will have unqualified access to health care…." *Hudson v. McMillian*, 503 U.S. 1, 9 (1992). Accordingly, prison officials are not deliberately indifferent simply because they selected or prescribed a course of treatment different than the one the inmate requests or prefers. *Toguchi*, 391 F.3d at 1058. Only where the prison officials' "'chosen course of treatment was medically unacceptable under the circumstances,' and was chosen 'in conscious disregard of an excessive risk to the prisoner's health,'" will the treatment decision be found unconstitutionally infirm. *Id.* (quoting *Jackson v. McIntosh*, 90 F.3d 330, 332 (9th Cir. 1996)). In addition, it is only where those infirm treatment decisions result in harm to the plaintiff—though the harm need not be substantial—that Eighth Amendment liability arises. *Jett*, 439 F.3d at 1096.

1. **Analysis**

Starting with the objective element, the parties agree that LeClair's Hep-C constitutes a "serious medical need." However, Defendants argue summary judgment

should be granted because LeClair cannot establish the second, subjective element of his claim. Specifically, Defendants argue they were not deliberately indifferent to LeClair's condition. Under the subjective element, there must be some evidence to create an issue of fact as to whether the prison official being sued knew of, and deliberately disregarded the risk to LeClair's safety. *Farmer*, 511 U.S. at 837. "Mere negligence is not sufficient to establish liability." *Frost v. Agnos*, 152 F.3d 1124, 1128 (9th Cir. 1998). Moreover, this requires LeClair to "demonstrate that the defendants' actions were both an actual and proximate cause of [his] injuries." *Lemire v. California*, 726 F.3d 1062, 1074 (9th Cir. 2013) (citing *Conn v. City of Reno*, 591 F.3d 1081, 1098- 1101 (9th Cir. 2010), *vacated by City of Reno, Nev. v. Conn*, 563 U.S. 915 (2011), *reinstated in relevant part* 658 F.3d 897 (9th Cir. 2011).

Here, as detailed above, Defendants submitted authenticated and undisputed evidence regarding the medical treatment LeClair received while incarcerated related to his Hep-C. (*See* ECF Nos. 32-1, 32-2, 32-3, 32-4, 32-5 (sealed).) According to this evidence, LeClair was first enrolled in CCC for monitoring of his Hep-C in 2012. (ECF No. 32-1 (sealed).) LeClair received routine care through the CCC for his Hep-C. (*Id.*)

In October 2018 his APRI score was 0.74 and his Fibrosure score was F3 which is the 'Bridging Fibrosis' level but below the Cirrhosis level. (ECF Nos. 30 at 3; 32-2 at 4 (sealed).) Additionally, LeClair did not exhibit any symptoms of decreased liver function. (ECF No. 30-5 at 4.) APRI scores of above 0.5 indicate there is likely some liver damage, known as fibrosis. (*Id.* at 3.) APRI scores above 1.5 indicate a patient likely has or is quickly approaching cirrhosis of the liver. (*Id.*) Minev states LeClair was not a candidate for the advanced Chronic Hep-C treatment program available at the time based on his APRI score and his lack of clinical signs indicating decreased liver function. (*Id.* at 4.)

In December 2018, LeClair filed a grievance claiming he needed treatment for his Hep-C. (ECF No. 30-2.) He received a response that he was being monitored and had been submitted to the review committee for possible treatment. (*Id.*) On October 22, 2019, LeClair had an abdominal ultrasound that showed "mild hepatomegaly, no liver mass."

(ECF No. 32-4 (sealed).) LeClair's APRI score in October 2019 was 0.73 which was not within the range to require immediate treatment under MD 219, at that time. (ECF No. 30-5 at 4.)

On November 2, 2019, LeClair was seen by Kevin Kuriakose, M.D. of Renown Regional Medical Center who diagnosed LeClair with "compensated cirrhosis" and prescribed DAA treatment (Epclusa) for Hep-C. (ECF Nos. 32-1 at 10; 32-3 at 3 (sealed).) LeClair completed DAA treatment on February 3, 2020. (ECF No. 32-1 at 3 (sealed).) LeClair was again seen by Dr. Kuriakose on February 25, 2020, for a follow-up appointment for his Hep-C treatment. (ECF No. 32-1 at 3-6 (sealed).) Lab work completed following LeClair's treatment shows no evidence of Hep-C in his system. (ECF No. 32-5 at 2, 3, 5 (sealed).)

Based on the above evidence, the Court finds that Defendants have submitted authenticated evidence that establishes they affirmatively monitored and ultimately treated LeClair's Hep-C. Therefore, the Court finds Defendants have met their initial burden on summary judgment by showing the absence of a genuine issue of material fact as to the deliberate indifference claim. *See Celotex Corp.*, 477 U.S. at 325. The burden now shifts to LeClair to produce evidence that demonstrates an issue of fact exists as to whether Defendants were deliberately indifferent to his medical needs. *Nissan*, 210 F.3d at 1102.

LeClair's opposition primarily focuses on MD 219 and his assertion that medical standards required immediate treatment. (ECF No. 34 at 10-12.) LeClair's opposition reiterates his claim, <u>without any admissible medical evidence</u>, that the delay in providing him treatment for his Hep-C caused him further damage, including cirrhosis. (*Id.* at 12.) To prove deliberate indifference, however, LeClair must show that a delay in treatment <u>caused</u> further injury. *See Jett*, 439 F.3d at 1096. LeClair's own expert witness does not allege that he sustained damage because of the alleged delay. (*See* ECF No. 34-2 at 6) The expert's discussion of harm was in a general section relating to the standard of care, and not directed to LeClair specifically. (*Id.* at 4)

The objective medical evidence before the Court shows, in October 2018 LeClair's APRI score was 0.74 and his Fibrosure score was F3 which is the 'Bridging Fibrosis' level but below the Cirrhosis level. (ECF Nos. 30 at 3; 32-2 at 4 (sealed).) In December 2018, LeClair filed a grievance claiming he needed treatment for his Hep-C. (ECF No. 30-2.) He received a response that he was being monitored and had been submitted to the review committee for possible treatment. (*Id.*) On October 22, 2019, LeClair had an abdominal ultrasound that showed "mild hepatomegaly, no liver mass." (ECF No. 32-4 (sealed).) LeClair's APRI score in October 2019 was 0.73 which was not within the range to require immediate treatment under MD 219, at that time. (ECF No. 30-5 at 4.) Additionally, LeClair did not exhibit any symptoms of decreased liver function. (*Id.*)

On November 2, 2019, LeClair was seen by Kevin Kuriakose, M.D. of Renown Regional Medical Center who diagnosed LeClair with "compensated cirrhosis" and prescribed DAA treatment (Epclusa) for Hep-C. (ECF Nos. 32-1 at 10; 32-3 at 3 (sealed).) LeClair completed DAA treatment on February 3, 2020. (ECF No. 32-1 at 3 (sealed).) LeClair was again seen by Dr. Kuriakose on February 25, 2020, for a follow-up appointment for his Hep-C treatment. (ECF No. 32-1 at 3-6 (sealed).) Lab work completed following LeClair's treatment shows no evidence of Hep-C in his system. (ECF No. 32-5 at 2, 3, 5 (sealed).)

While cirrhosis was referenced in two of LeClair's medical records, aside from his own assertions, LeClair provides no further evidence or support that a delay in treatment for his Hep-C was <u>the cause</u> of any damage. He has not come forward with evidence to show Defendants knew of an excessive risk to his health and disregarded that risk. The evidence before the Court shows LeClair was treated for his Hep-C through monitoring and other actions and there is no evidence showing that his Hep-C or any delay in providing treatment was <u>the cause</u> of any damage. Therefore, LeClair has failed to meet his burden on summary judgment to establish that prison officials were deliberately indifferent to his medical needs as he failed to come forward with any evidence to create an issue of fact as to whether Defendants deliberately denied, delayed, or intentionally

interfered with the treatment plan. *See Hallett*, 296 F.3d at 744.

Moreover, to the extent that LeClair's assertions in this case are based upon his disagreement with Defendants' choice of treatment, this does not amount to deliberate indifference. *See Toguchi*, 391 F.3d at 1058. In cases where the inmate and prison staff simply disagree about the course of treatment, only where it is medically unacceptable can the plaintiff prevail. *Id.* Therefore, LeClair has failed to show that the NDOC's "chosen course of treatment was medically unacceptable under the circumstances." *Id.* Accordingly, LeClair fails to meet his burden to show an issue of fact that Defendants were deliberately indifferent to his needs because LeClair has only shown that he disagrees between alternative courses of treatment, such as being given drug intervention treatment as opposed to having his Hep-C monitored for progression.

Based on the above, the Court recommends that Defendants' motion for summary judgment as to the medical deliberate indifference claim be granted.[3]

## V.     CONCLUSION

For good cause appearing and for the reasons stated above, the Court recommends that Defendants' motion for summary judgment, (ECF No. 30), be granted.

The parties are advised:

1.     Pursuant to 28 U.S.C. § 636(b)(1)(c) and Rule IB 3-2 of the Local Rules of Practice, the parties may file specific written objections to this Report and Recommendation within fourteen days of receipt. These objections should be entitled "Objections to Magistrate Judge's Report and Recommendation" and should be accompanied by points and authorities for consideration by the District Court.

2.     This Report and Recommendation is not an appealable order and any notice of appeal pursuant to Fed. R. App. P. 4(a)(1) should not be filed until entry of the District Court's judgment.

///

---

[3] Because the Court finds that LeClair's claim fails on the merits, the Court need not address Defendants' personal participation or qualified immunity arguments.

## VI. RECOMMENDATION

**IT IS THEREFORE RECOMMENDED** that Defendants' motion for summary judgment, (ECF No. 30), be **GRANTED**; and,

**IT IS FURTHER RECOMMENDED** that the Clerk **ENTER JUDGMENT** in favor of Defendants and **CLOSE** this case.

**DATED**: September 30, 2022.

_____
UNITED STATES MAGISTRATE JUDGE