UNITED STATES DISTRICT COURT

DISTRICT OF NEVADA

\* \* \*

| | |
|---|---|
| ROBERT LECLAIR,<br><br>                              Plaintiff,<br>      v.<br>JAMES DZURENDA, *et al.*,<br><br>                            Defendants. | Case No. 3:19-cv-00404-MMD-CLB<br><br>ORDER |

**I.    SUMMARY**

Plaintiff Robert LeClair, who is an inmate at Northern Nevada Correctional Center ("NNCC") and represented by counsel, brings this action under 42 U.S.C. § 1983 against Defendants Martin Naughton, Charles Daniels, James Dzurenda, Harold Wickham, Romeo Aranas, and Michael Minev. (ECF No. 11.) Before the Court is the Report and Recommendation ("R&R") of United States Magistrate Judge Carla L. Baldwin (ECF No. 37), recommending the Court grant Defendants' motion for summary judgment (ECF No. 30 ("Motion"))[1] and close the case. Plaintiff filed an objection to the R&R.[2] (ECF No. 38 ("Objection").) As further explained below, the Court will reject the R&R and sustain Plaintiff's Objection[3] because there is a genuine dispute of material fact as to whether Defendants were deliberately indifferent to Plaintiff's serious medical needs by delaying his Hepatitis C ("Hep-C") treatment. However, the Court will dismiss some Defendants,

---

[1]Plaintiff responded (ECF No. 34) and Defendants replied (ECF No. 36) to the Motion. Defendants have also submitted sealed medical records in support of their Motion. (ECF No. 32.)

[2]Defendants responded to Plaintiff's Objection. (ECF No. 39.)

[3]The Court notes that Plaintiff does not explicitly address Defendants' personal participation and qualified immunity arguments in his Objection. (ECF No. 38.) However, Judge Baldwin declined to address these arguments in the R&R because she found that Plaintiff's claim failed on the merits. (ECF No. 37 at 15 n.3.) Thus, the Court will independently address the arguments in this order. *See* 28 U.S.C. § 636(b)(1).

as detailed herein, because they undisputedly lack personal participation in the alleged Eighth Amendment violation. Accordingly, the Court will grant in part and deny in part Defendants' Motion.

## II. BACKGROUND

The Court incorporates by reference and adopts Judge Baldwin's description of the case's factual background and procedural history provided in the R&R. (ECF No. 37 at 1-7.)

## III. DISCUSSION

The Court will first reject the R&R and sustain Plaintiff's Objection because there is a genuine dispute of material fact as to whether Defendants were deliberately indifferent in treating Plaintiff's Hep-C. The Court will then dismiss specific Defendants because they undisputedly did not personally participate in the alleged Eighth Amendment violation.[4] Finally, the Court will deny Defendants' Motion as to the qualified immunity issue because there is still a genuine dispute regarding whether the remaining Defendants were deliberately indifferent to Plaintiff's serious medical needs.

### A.  Eighth Amendment Deliberate Indifference Analysis

Plaintiff objects to Judge Baldwin's recommendation that the Motion should be granted for Plaintiff's Eighth Amendment deliberate indifference claim. (ECF No. 38.) In the R&R, Judge Baldwin found that Defendants affirmatively monitored and ultimately treated Plaintiff's Hep-C, and Plaintiff failed to provide sufficient evidence that the alleged treatment delay caused damage. (ECF No. 37 at 13-14.) Plaintiff counters that the delay in treatment was medically unacceptable, caused him to develop cirrhosis, and caused him to suffer painful Hep-C symptoms. (ECF No. 38 at 4-6.) The Court agrees with Plaintiff.

To establish an Eighth Amendment violation for deliberate indifference to an inmate's serious medical needs, a plaintiff must satisfy both an objective standard—that

---

[4]After screening of the second amended complaint (ECF No. 11 ("SAC")), only Plaintiff's Eighth Amendment deliberate indifference claim remains. (ECF No. 12.)

the deprivation was serious enough to constitute cruel and unusual punishment—and a subjective standard—deliberate indifference."[5] *Snow v. McDaniel*, 681 F.3d 978, 985 (9th Cir. 2012)*, overruled on other grounds by Peralta v. Dillard*, 744 F.3d 1076 (9th Cir. 2014). To satisfy the subjective prong, the prison official must be "both be aware of facts from which the inference could be drawn that a substantial risk of serious harm exists . . . [and] also draw the inference." *Peralta*, 744 F.3d at 1086 (citation omitted). The prison official is not liable if he knew of the substantial risk and acted reasonably, which is contingent on the circumstances that "normally constrain what actions a state official can take." *Id.* at 1082 (citation omitted).

When a prisoner alleges that delay of medical treatment evinces deliberate indifference, the prisoner must show that the delay led to further injury. *See Shapley v. Nev. Bd. of State Prison Comm'rs*, 766 F.2d 404, 407 (9th Cir. 1985). Moreover, "[a] difference of opinion between a prisoner-patient and prison medical authorities regarding treatment" is insufficient. *Franklin v. State of Or., State Welfare Div*., 662 F.2d 1337, 1344 (9th Cir. 1981) (citations omitted). Instead, the plaintiff must show that the treatment course "was medically unacceptable under the circumstances" and chosen "in conscious disregard of an excessive risk to plaintiff's health." *Toguchi v. Chung*, 391 F.3d 1051, 1058 (9th Cir. 2004) (citing *Jackson v. McIntosh*, 90 F.3d 330, 332 (9th Cir. 1996), *overruled in part on other grounds by Peralta*, 744 F.3d 1076).

Although Defendants submitted some evidence of normal or "unremarkable" test results for liver function, Plaintiff has presented other evidence that raises a genuine dispute as to whether Defendants were deliberately indifferent and whether he was further harmed by the treatment delay. First and foremost, Plaintiff's medical records and clinical symptoms suggest that he suffered liver damage and liver scarring due to the treatment delay. Plaintiff was initially diagnosed with Hep-C around 2003, the Nevada Department of Corrections ("NDOC") has known about his diagnosis since at least 2012, but he did

---

[5]The Court will focus its analysis on the subjective prong since the parties agree that Hep-C constitutes a serious medical need.

not receive direct-acting antiviral ("DAA") treatment[6] until November 2019. (ECF No. 32-1 at 2-3.) By October 2018, Plaintiff already reached a fibrosure score of F3 or bridging fibrosis.[7] (ECF No. 32-1 at 12.) Dr. Minev, the current NDOC Medical Director, explained that a F3 score could be late-stage fibrosis (liver scarring) or early cirrhosis. (ECF No. 34-3 at 13.) Dr. Naughton, Plaintiff's NDOC medical doctor, agreed that a F3 score indicates "fairly severe scarring," and Plaintiff would have been a candidate for DAA treatment had Medical Directive ("MD") 219 not been in place.[8] (ECF No. 34-1 at 5.)

Plaintiff was later diagnosed with compensated cirrhosis[9] by Dr. Kevin Kuriakose and finally prescribed DAA treatment (Epclusa) in November 2019. (ECF No. 32-1 at 5, 10.) According to Dr. Minev, when a Hep-C patient reaches cirrhosis, there is "end-stage damage to the liver." (ECF No. 34-3 at 9.) Dr. Amanda Cheung,[10] Plaintiff's expert, explains that a patient may also develop liver failure and liver cancer at that stage. (ECF

---

[6]According to Dr. Cheung, DAA therapy is a "highly effective and well-tolerated treatment" that became available in the U.S. in 2014 and was "a key development in curing" Hep-C. (ECF No. 34-2 at 4.)

[7]According to Dr. Minev, chronic Hep-C causes liver fibrosis, which is the "initial stage of liver scarring" or liver damage. (ECF Nos. 30-5 at 2, 34-3 at 8-9.) When the fibrosis increases, it may lead to cirrhosis of the liver, which is "end-stage damage to the liver" that forestalls common liver functions." (ECF Nos. 30-5 at 2, 34-3 at 9.)

[8]MD 219 was the protocol that governed NDOC's treatment of Hep-C for inmates at the time of Plaintiff's grievance. According to Defendants, a "committee made up of at least three senior member[s] of the medical department reviewed each HCV positive inmate and evaluated treatment options" and the "NDOC prioritized treatment based on an inmate[']s APRI score." (ECF No. 30 at 6.) Inmates with an APRI score below 2.0 did not receive priority for DAA treatment. (*Id*.) MD 219 has since been modified, following a consent decree, where all inmates with Hep-C "who do not make the voluntary choice to opt out of treatment, will be treated with DAAs. This applies to all inmates unless there are medical issues that would make doing so cause more harm." (*Id*.)

[9]Defendants argue that "objective testing" does not support Plaintiff's diagnosis of cirrhosis. (ECF No. 36 at 4-5.) However, Defendants acknowledge that cirrhosis has been "referenced in some of [Plaintiff's] medical records" and Dr. Kuriakose specifically diagnosed Plaintiff with compensated cirrhosis; Plaintiff also states in his affidavit that he was "called to medical to be told [he] [had] cirrhosis of the liver." (ECF Nos. 32-1 at 10, 34-6 at 2, 36 at 4.) Thus, whether or not Plaintiff actually reached cirrhosis is a disputed material fact which must be resolved at trial.

[10]Dr. Cheung is a board-certified doctor, "with subspecialty certifications in gastroenterology (2017) and transplant hepatology (2018)." (ECF No. 34-2 at 6.) Her practice includes "general hepatology and transplant hepatology patients." (*Id*.)

No. 34-2 at 4.) When viewed in the light most favorable to Plaintiff, a reasonable jury could find that Plaintiff reached cirrhosis and suffered liver damage and significant liver scarring due to the years-long treatment delay. *See Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248-51 (1986) (Summary judgment is not appropriate where reasonable minds could differ on the material facts at issue); *Kaiser Cement Corp. v. Fishbach & Moore, Inc.*, 793 F.2d 1100, 1103 (9th Cir. 1986) (citation omitted) (In evaluating a summary judgment motion, a court views all facts and draws all inferences in the light most favorable to the nonmoving party).

Next, Plaintiff contends that the treatment delay caused him to suffer painful Hep-C symptoms that affected his quality of life. (ECF Nos. 34-6 at 1-2, 38 at 4.) Plaintiff's argument is supported by his medical records and affidavit. Plaintiff complained of fatigue, inconsistent bowel movements, continuous and frequent drops in energy levels where he did not want to get out of bed, loss of appetite, jaundice, the feeling of a "swollen" liver and cramping, nausea, frequent abdominal pain, and the feeling that "somebody knocked the wind out of" him. (ECF Nos. 32-1 at 3, 9, 34-6 at 1-2.) Dr. Minev confirmed that some of these symptoms are found in patients with untreated Hep-C. (ECF No. 34-3 at 7-8.) Plaintiff's abdominal sonogram from October 2019 also showed an enlarged liver and increased liver echotexture. (ECF No. 32-4 at 2.) Dr. Naughton agreed that an enlarged liver may be consistent with an injury from Hep-C. (ECF No. 34-1 at 6.) When viewed in the light most favorable to Plaintiff, a reasonable jury could find that the years-long treatment delay caused Plaintiff to endure painful Hep-C symptoms and injured his liver, and that Defendants knew of the substantial risks to Plaintiff's health, but they still failed to act reasonably. *See Kaiser*, 793 F.2d at 1103; *Peralta*, 744 F.3d at 1086.

The fact that Plaintiff finally received DAA treatment in November 2019 and has no detectable HCV in his blood does not change the Court's analysis. (ECF Nos. 32-1 at 5-6, 32-5 at 3.) There remains a genuine dispute as to whether the harm Plaintiff sustained during the years-long delay is reversible or permanent. First, in his affidavit, Plaintiff attests under penalty of perjury that despite receiving DAA treatment, he

continues to suffer from liver issues and distress, and he is "currently waiting to see medical for abdominal issues." (ECF No. 34-6 at 2.) Next, the record suggests that once Hep-C patients reach cirrhosis, some of the damage is irreversible and they need continued monitoring for certain illnesses. For instance, Renown doctors explained in a letter to Dzurenda that "[i]f the window of opportunity to treat early in the disease process is missed, patients risk potentially irreversible complications such as vasculitis, cirrhosis, liver failure and cancer." (ECF No. 34-4 at 1.) Dr. Cheung likewise concurred that "[e]ven after HCV cure, the risk of liver cancer persists." (ECF No. 34-2 at 4.)

Plaintiff's treatment plan from Dr. Kuriakose also stated that a "[p]atient with cirrhosis will need continued surveillance for hepatocellular carcinoma with imaging +/- labs per AASLD recommendations." (ECF No. 32-1 at 6.) Most importantly, it is not the role of the Court to determine the truth of whether Plaintiff incurred lasting harm at summary judgment—the Court need only decide whether reasonable minds could differ on an issue when interpreting the record. *See Anderson*, 477 U.S. at 249, 255 (citation omitted); *Melnik v. Aranas*, Case No. 20-15471, 2021 WL 5768468, at *1 (9th Cir. Dec. 6, 2021) (finding that "the extent of the harm caused by the delay is a disputed question of fact not appropriately answered at [the summary judgment] stage"). Here, viewing the evidence in the light most favorable to Plaintiff, reasonable minds could differ as to whether Plaintiff sustained irreversible and lasting liver damage.

Finally, the Court is unpersuaded by Defendants' argument that Plaintiff's Hep-C treatment constituted a mere difference in opinion between Plaintiff and medical staff. (ECF No. 39 at 6.) *See Franklin*, 662 F.2d at 1344. Plaintiff provides sufficient evidence, where a reasonable jury could find that the treatment was "medically unacceptable under the circumstances," and in violation of the Eighth Amendment. *See Toguchi*, 391 F.3d at 1058 (citation omitted). As explained above, Plaintiff suffered debilitating physical Hep-C symptoms and his disease had progressed to the compensated cirrhosis stage when he received DAA treatment. (ECF Nos. 32-1 at 3, 10, 34-6 at 1-2.) A reasonable jury could find that allowing Plaintiff's disease to progress to cirrhosis before providing him with life-

saving treatment is "medically unacceptable" and "in conscious disregard of an excessive risk to plaintiff's health." *Id*. Moreover, NDOC's policy of prioritizing DAA treatment based on inmates' APRI scores likely contravened national and community guidelines. *See Balla v. Idaho*, 29 F.4th 1019, 1026 (9th Cir. 2022) (noting that the community standard of care outside the prison context is "*highly relevant*" in determining "what care is medically acceptable and unacceptable") (emphasis added, citations omitted). Dr. Minev explained that DAA medications became readily available after 2013 and agreed that DAA treatment is generally "the standard of care" for chronic Hep-C patients after clinical assessment. (ECF No. 34-3 at 7-8.)

Additionally, when Renown doctors compared NDOC Hep-C protocols with community standards and guidelines, they concluded there was "room for improvement" and advocated for the testing and treatment of *all* Hep-C prisoners. (ECF No. 34-4 at 1-2.) The doctors specifically warned that NDOC's protocol can "lead to irreversible complications" and can potentially miss diagnoses for the majority of patients. (*Id*. at 2.) Dr. Cheung also opined that NDOC's treatment protocol was "dated" and would only have been reasonable *before* the advent of oral DAA therapies; DAA treatment is recommended to *all* individuals regardless of fibrosis stage unless the individual has an alternative chronic illness that could minimize life expectancy. (ECF No. 34-2 at 5.) Thus, a reasonable jury could find that Defendants' Hep-C policy failed to meet community standards outside of prison and was medically unacceptable. *See Balla*, 29 F.4th at 1026; *Toguchi*, 391 F.3d at 1058.

Accordingly, the Court rejects Judge Baldwin's R&R, denies Defendants' Motion in part as to Plaintiff's Eighth Amendment deliberate indifference claim, and sustains Plaintiff's Objection.

///

///

### B.     § 1983 Personal Participation[11]

Next, Defendants argue that they should be dismissed because they did not personally participate in the alleged Eighth Amendment violation. Defendants specifically contend that they either had no authority to order Plaintiff's treatment or they were not his treating physician. (ECF No. 30 at 10.) Plaintiff counters that Defendants are liable because they personally denied him treatment, or they made and implemented harmful Hep-C policies that denied him necessary care. (ECF Nos. 11 at 1-3, 34 at 3-5, 10-13.) The Court agrees that summary judgment should be granted as to some Defendants for lack of personal participation.

A defendant is liable under 42 U.S.C. § 1983 "only upon a showing of personal participation by the defendant." *Taylor v. List*, 880 F.2d 1040, 1045 (9th Cir. 1989) (citation omitted). A person deprives another "of a constitutional right, within the meaning of section 1983, if he does an affirmative act, participates in another's affirmative acts, or omits to perform an act which he is legally required to do that causes the deprivation of which [the plaintiff complains]." *Leer v. Murphy*, 844 F.2d 628, 633 (9th Cir. 1988) (emphasis in original, citation omitted). A supervisor is liable under § 1983 "if there exists either (1) his or her personal involvement in the constitutional deprivation, or (2) a sufficient causal connection between the supervisor's wrongful conduct and the constitutional violation." *Starr v. Baca*, 652 F.3d 1202, 1207 (9th Cir. 2011) (citation omitted); *see also Melnik*, 2021 WL 5768468, at *1 (citations omitted).

A defendant is also liable if he or she personally reviewed and responded to the plaintiff's grievance about the alleged constitutional deprivation, was aware of the plaintiff's condition and alternative recommendations, but still failed to prevent further harm. *See Colwell v. Bannister*, 763 F.3d 1060, 1070 (9th Cir. 2014); *Snow*, 681 F.3d at 989. However, "merely denying a grievance without some decision-making authority or

---

[11]As noted above, the Court will independently address Defendants' personal participation and qualified immunity arguments, as Judge Baldwin declined to address these arguments in the R&R because she found that Plaintiff's claim failed on the merits. (ECF No. 37 at 15 n.3.)

ability to resolve the underlying issue grieved is not enough to establish personal participation." *Countryman v. Sherman*, Case No. C19-01767-JCC-SKV, 2022 WL 17406341, at *10 (W.D. Wash. Oct. 21, 2022) (citations omitted).

To start, the Court finds that summary judgment should be granted to Defendants Daniels, the current NDOC Director, and Wickham, the former NDOC Acting Director and current Deputy Director of Operations, for lack of personal participation. (ECF Nos. 11 at 2, 30-3 at 2.) As to Daniels, there is nothing in the record to suggest that he has the authority to make medical decisions for inmates or formulates medical directives. The record, instead, suggests that those responsibilities are delegated to the Medical Director. (ECF No. 30-7 at 2.) Wickham similarly maintains that he did not have input in the formulation of NDOC Medical Directives and was not a part of any Hep-C panel. (*Id*.) He was also unaware of Plaintiff's medical condition and Hep-C status. (*Id*.) *See Starr*, 652 F.3d at 1207 (citation omitted); *Colwell*, 763 F.3d at 1070; *Snow*, 681 F.3d at 989. The mere fact that Daniels and Wickham are current NDOC Director or Deputy Director and are broadly responsible for NDOC budgeting and management do not suffice for § 1983 personal participation.[12] (ECF No. 11 at 2.) Accordingly, the Court grants summary judgment in favor of Defendants Daniels and Wickham based on their lack of personal participation.

As to Defendant Dzurenda, who was NDOC Director until 2019, there remains a genuine dispute as to his personal involvement. (ECF Nos. 11 at 2, 30-4 at 2.) Although Dzurenda claims he was unaware of Plaintiff's condition and never had any contact with him, Plaintiff included a June 2019 letter from Renown doctors that was explicitly addressed to Dzurenda. (ECF Nos. 30-4 at 2, 34-4 at 1.) In the letter, the Renown doctors

---

[12]The Ninth Circuit has held that a current warden and NDOC director are appropriate defendants in a plaintiff's claim for injunctive relief because they "would be responsible for ensuring that injunctive relief was carried out," even when they were not personally involved. *See Colwell*, 763 F.3d at 1070 (citation omitted). However, this holding, in and of itself, is insufficient for Daniels and Wickham to remain as Defendants in this case because Plaintiff has already received his requested injunctive relief and was treated with DAA drugs in 2019. (ECF Nos. 11, 32-1 at 3, 32-5 at 3.) The present case is only proceeding on monetary damages.

claimed that they met with Dzurenda on May 30, 2019, to discuss NDOC's Hep-C treatment protocol. (ECF No. 34-4 at 1.) The letter also outlined the protocol's flaws and the health consequences of delaying DAA treatment until an inmate's disease progressed. (*Id*. at 1-2.) Because this letter was addressed to Dzurenda—*not* the NDOC Medical Director, because Dzurenda personally met with the Renown doctors, and because the doctors specifically made their recommendations to Dzurenda, a reasonable jury could infer that Dzurenda had the decision-making authority to resolve the underlying issues with NDOC's Hep-C protocol. (*Id*.) A reasonable jury could also find that Dzurenda's failure to act, intervene, or remedy the flawed protocol deprived Plaintiff of necessary DAA treatment and caused his disease to progress. *See Starr*, 652 F.3d at 1207 (citation omitted); *see also Melnik*, 2021 WL 5768468, at *1 (citations omitted). The Court therefore denies summary judgment in favor of Dzurenda.

Plaintiff then argues that Defendant Naughton, a NDOC medical provider, personally participated in the Eighth Amendment violation. (ECF Nos. 11 at 1, 34 at 3.) The Court agrees. Naughton was Plaintiff's NDOC doctor and first saw him around June 2017. (ECF No. 34-1 at 4.) Although Naughton maintains that he was simply following MD 219 when he denied Plaintiff DAA medications, Naughton also admits that he was a member of the Hep-C Committee, where providers discussed the management and treatment of Hep-C inmates at meetings. (ECF Nos. 34-1 at 3, 5, 34-3 at 20.) Naughton consulted with other physicians on the Committee regarding patients' Hep-C treatment course. (ECF No. 34-1 at 3.) In light of Dr. Naughton's own admissions and statements, a reasonable jury could find that he was aware of Plaintiff's serious Hep-C condition, aware that Plaintiff needed DAA treatment, had the authority to order such treatment due to his position on the Hep-C Committee, but still failed to act to prevent harm. *See Colwell*, 763 F.3d at 1070; *Snow*, 681 F.3d at 989. The Court therefore denies summary judgment in favor of Naughton.

Plaintiff also sues Defendant Aranas, the former NDOC Medical Director appointed in 2013, and Minev, the current NDOC Medical Director appointed in October 2018, for

their personal participation in the alleged Eighth Amendment violation. (ECF Nos. 11 at 2-3, 30-5 at 2, 30-6 at 2.) As to Aranas, he admits that he was directly responsible for "the formulation of health policy" including "developing and monitoring standards and procedures for health care services" for NDOC inmates. (ECF No. 30-6 at 2.) In his declaration, Wickham confirmed that the "medical providers at the various institutions are under the direction of the Medical Director" and the "Medical Directives for the NDOC are formulated and enforced by the Medical Director." (ECF No. 30-7 at 2.) Thus, although Aranas denies responding to Plaintiff's grievances or having interactions with Plaintiff, a reasonable jury could find that he was personally responsible for the treatment delay because he formulated or helped formulate NDOC medical directives that deprived Plaintiff of DAA drugs for years and caused Plaintiff's Hep-C to progress to cirrhosis. (ECF Nos. 30-6 at 2, 30-7 at 2.) *See Starr*, 652 F.3d at 1207; *see also* Melnik, 2021 WL 5768468, at *1 (citations omitted). The Court therefore denies summary judgment in favor of Aranas.

Finally, there is substantial evidence in the record to support Minev's personal participation in the Eighth Amendment violation. As current NDOC Medical Director, Minev oversees the advanced chronic Hep-C treatment program, reviews the test results and medical records of Hep-C inmates, and decides which inmates need advanced Hep-C treatment. (ECF No. 30-5 at 3.) As noted above, Wickham confirmed that the NDOC Medical Director also formulates and enforces NDOC Medical Directives. (ECF No. 30-7 at 2.) In fact, Minev admitted in his deposition that he helped revise MD 219 for Hep-C treatment protocol and may have been a member of the Utilization Review Committee. (ECF No. 34-3 at 10, 21 ("It's a committee where *we* discuss offenders' medical conditions and coordinate their care with outside medical entities or get certain medications, such as non-formulary medications, for their treatment") (emphasis added).) Thus, a reasonable jury could find that Minev personally participated because he helped formulate and revise NDOC directives that deprived Plaintiff of DAA drugs and caused his Hep-C to progress. *See Starr*, 652 F.3d at 1207.

Additionally, Minev personally reviewed Plaintiff's grievance in May 2019 and denied him treatment because he did not meet the NDOC's criteria—a criteria he helped formulate. (ECF No. 30-2 at 2.) By that time, Plaintiff's medical records indicate that he had progressed to F3 bridging fibrosis or late-stage liver scarring and would soon be diagnosed with compensated cirrhosis. (ECF Nos. 32-1 at 5, 12, 34-3 at 13.) Despite acknowledging that untreated Hep-C can lead to liver failure, neurological issues, and gastrointestinal issues, Minev still denied Plaintiff Hep-C treatment. (ECF No. 34-3 at 7.) When viewed in the light most favorable to Plaintiff, a reasonable jury could find that Minev was aware of Plaintiff's serious Hep-C condition, aware that he needed DAA drugs, and aware of the serious consequences of denying those drugs, but still failed to provide Plaintiff with necessary treatment and prevent further harm. *See Colwell*, 763 F.3d at 1070 (finding summary judgment inappropriate because the NDOC Medical Director personally denied Colwell's second-level grievance when he was aware that an optometrist had recommended surgery); *Snow*, 681 F.3d at 989 (finding that the warden and associate warden were not entitled to summary judgment because they were aware of Snow's serious hip condition, aware he needed surgery after reviewing a "no-kneel" order that stated he needed hip surgery, and still failed to act); *Melnik, 2021 WL 5768468*, at *1 (finding there was "significant evidence of Dr. Aranas's personal involvement" because he was "chair of the two-person committee making approvals and handing down denials" and responded to one of the plaintiff's grievances for treatment). The Court therefore denies summary judgment in favor of Minev.

In sum, Defendants' Motion is granted as to Charles Daniels and Harold Wickham for lack of personal participation, and denied as to James Dzurenda, Martin Naughton, Michael Minev, and Romeo Aranas.[13]

---

[13]In the SAC, Plaintiff appears to be suing Defendants in their official capacity. (ECF No. 11 at 1-3.) The Court will nevertheless construe Plaintiff's claim as against Defendants in their individual capacity as well, and will amend the pleading under Fed. R. Civ. P. 15(b). *See Desertrain v. City of L.A.*, 754 F.3d 1147, 1154 (9th Cir. 2014) ("[L]eave to amend shall be freely given when justice so requires" and "[f]ive factors are taken into account to assess the propriety of a motion for leave to amend: bad faith, undue

### C. Qualified Immunity

Defendants argue that they are entitled to qualified immunity because other circuit courts have found that the failure to promptly provide inmates with specific treatment does not violate the Eighth Amendment, and some Defendants lacked knowledge and authority to order medical treatment. (ECF No. 30 at 12.) The Court disagrees.

The doctrine of qualified immunity "balances two important interests—the need to hold public officials accountable when they exercise power irresponsibly and the need to shield officials from harassment, distraction, and liability when they perform their duties reasonably." *Pearson v. Callahan*, 555 U.S. 223, 231 (2009). In deciding whether a government official is entitled to qualified immunity, the Court asks "(1) whether the official's conduct violated a constitutional right; and (2) whether that right was 'clearly established' at the time of the violation." *Hines v. Youseff*, 914 F.3d 1218, 1228 (9th Cir. 2019) (citing *Castro v. Cnty. of L.A.*, 833 F.3d 1060, 1066 (9th Cir. 2016) (en banc)). However, the Court has discretion "in deciding which of the two prongs of the qualified immunity analysis should be addressed first in light of the circumstances in the particular case at hand." *Pearson*, 555 U.S. at 236.

The Court will exercise its discretion and first address whether the remaining Defendants' conduct violated a constitutional right. *See id*. As stated above, there is still a genuine dispute of material fact as to whether Dzurenda, Aranas, Minev, and Naughton were deliberately indifferent to Plaintiff's serious medical needs under the Eighth

---

delay, prejudice to the opposing party, futility of amendment, and whether the plaintiff has previously amended the complaint") (citations and quotation marks omitted). Here, although Plaintiff has already amended his complaint twice, there is no evidence of bad faith, no undue delay and prejudice to Defendants since Defendants were notified by Plaintiff's SAC that he was pursuing monetary damages, and the amendment would not be futile since Defendants, who would otherwise be dismissed due to a procedural error, can remain in this lawsuit. The Court will therefore grant amendment and construe Plaintiff's Eighth Amendment claim as proceeding against Defendants in their official and individual capacities. However, because Plaintiff has already received his requested injunctive relief (DAA treatment), and a claim for monetary damages against an official sued in his official capacity is barred by the Eleventh Amendment, this case will only proceed against remaining Defendants Dzurenda, Naughton, Minev, and Aranas in their individual capacities. (ECF Nos. 32-1 at 6, 32-5 at 3.) *See Doe v. Lawrence Livermore Nat'l Lab.*, 131 F.3d 836, 839 (9th Cir. 1997).

Amendment. Therefore, it is uncertain at this point whether they violated a constitutional right, and they are not entitled to qualified immunity at this time. Defendants' Motion is therefore denied as to the qualified immunity issue.

## IV.   CONCLUSION

The Court notes that the parties made several arguments and cited to several cases not discussed above. The Court has reviewed these arguments and cases and determines that they do not warrant discussion as they do not affect the outcome of the issues before the Court.

It is therefore ordered that Plaintiff's objection (ECF No. 38) to the Report and Recommendation of U.S. Magistrate Judge Carla L. Baldwin is sustained.

It is further ordered that Judge Baldwin's Report and Recommendation (ECF No. 37) is rejected.

It is further ordered that Defendants' motion for summary judgment (ECF No. 30) is granted in part and denied in part. The motion is granted as to Defendants Charles Daniels and Harold Wickham; the motion is denied as to Defendants Martin Naughton, James Dzurenda, Romeo Aranas, and Michael Minev.

It is further ordered that under LR 16-5, the Court finds that it is appropriate to refer this case to Judge Baldwin to conduct a settlement conference. If the parties do not settle, the Joint Pretrial Order is due within 30 days of the date the settlement conference is held.

DATED THIS 2nd Day of February 2023.

MIRANDA M. DU
CHIEF UNITED STATES DISTRICT JUDGE